THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TRACEY GRISSOM,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        Case No. 2:19-cv-420-RAH-WC
                                         )
CORIZON LLC, *et al.*,                   )
                                         )
        Defendants.                      )

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a motion to dismiss filed by Defendant Jefferson Dunn ("Commissioner Dunn"), the Commissioner of the Alabama Department of Corrections ("ADOC") (Doc. 74), and a motion to dismiss filed by ADOC officials Sam H. Gordon, Yvette Young and Brian Coleman (together, "the Correctional Officials") (Doc. 63). Plaintiff Tracey Grissom ("Grissom" or "the Plaintiff") has filed a response to the Correctional Officials' motion (Doc. 76), and the Correctional Officials have filed a reply. (Doc. 79.) The Court will GRANT both motions, for the reasons set forth below.

**I. GRISSOM'S CLAIMS**

The Second Amended Complaint is not a model of clarity. As best as the Court is able to determine, Grissom lodges the following claims against the Defendants:

1

- <u>Count I</u>: Defendants Corizon, LLC, Dr. Gams, Nurses Manuel, Gilchrist and Jackson, Chief Gordon, Lt. Young, Lt. Coleman, Warden Stewart and Commissioner Dunn acted with deliberate indifference to Grissom's health by subjecting Grissom to cruel and unusual punishment in violation of the Eighth Amendment, pursuant to 42 U.S.C. § 1983. Grissom seeks injunctive relief as well as other equitable relief including attorney's fees and costs against all of the Defendants in their *official* capacities.

- <u>Count II</u>: Defendants Corizon, LLC, Dr. Gams, Nurses Manuel, Gilchrist and Jackson, Chief Gordon, Lt. Young, Lt. Coleman and Warden Stewart acted with deliberate indifference to Grissom's health by violating her Eighth Amendment right to be free from cruel and unusual punishment, pursuant to § 1983. She seeks monetary damages from these defendants in their *individual* capacities.

- <u>Count III</u>: Defendants Corizon, LLC, Dr. Gams, Nurses Manuel, Gilchrist and Jackson, Chief Gordon, Lt. Young, Lt. Coleman, Warden Stewart and Commissioner Dunn retaliated against Grissom in violation of her First Amendment right to petition the government for redress of grievances, pursuant to § 1983. Grissom seeks injunctive and other equitable relief including attorney's fees and costs against these defendants in their *official* capacities.

- <u>Count IV</u>: Defendants Corizon, LLC, Dr. Gams, Nurses Manuel, Gilchrist and Jackson, Chief Gordon, Lt. Young, Lt. Coleman and Warden Stewart retaliated against Grissom in violation of her First Amendment rights, pursuant to § 1983.[1] Grissom seeks monetary damages against these defendants in their *individual* capacities.

- <u>Count V</u>: Commissioner Dunn violated Title IX of the Education Amendments of 1972, 28 U.S.C. § 1681, *et seq*. by depriving Grissom of equal education opportunities. She seeks: (1) a declaratory judgment against Commissioner Dunn in his official capacity, finding that he violated Title IX by depriving women of the same educational opportunities offered to men in administering ADOC's federally-funded program; 2) injunctive relief that will ensure women receive the

---

[1] Grissom does not claim that Commissioner Dunn retaliated against her. (Doc. 51, p. 33.)

same educational and training opportunities from ADOC as men do; and 3) other relief including attorney's fees and other costs

- <u>Count VI</u>: Defendants Corizon, LLC, Dr. Gams and Nurses Manuel, Gilchrist and Jackson engaged in medical malpractice in violation of state law.

In sum, Grissom raises claims of deliberate indifference and retaliation against the correctional and medical defendants, as well as a Title IX claim asserting that Commissioner Dunn has deprived her of equal educational opportunities.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court must accept the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construe "them in the light most favorable to the plaintiff[]," *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A

plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Twombly*, 550 U.S. at 555. Furthermore, the Court's scope of review on a motion to dismiss is limited to the four corners of the complaint. *See St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## III.   GRISSOM'S ALLEGATIONS AND FACTUAL BACKGROUND

Grissom is an inmate in the custody of the ADOC, currently incarcerated at the Alabama Therapeutic Education Facility ("ATEF"). (Doc. 51, p. 28.)  Grissom previously was incarcerated at the Julia Tutwiler Prison for Women ("Tutwiler"). (*Id*., p. 1.) Defendants Sam H. Gordon, Yvette Young and Brian Coleman are all ADOC employees who, at the time of the events at issue in this lawsuit, were stationed at Tutwiler. (*Id*., p. 3; Doc. 64, p. 7.)

While at Tutwiler, Grissom received medical treatment for a variety of conditions and symptoms including, *inter alia*, severe complications from a total colectomy procedure she underwent prior to her incarceration at Tutwiler. (*Id.*, p. 5; Doc. 76, p. 6.)  Prior to the events at issue in this suit, Grissom participated in a separate lawsuit filed by the Southern Poverty Law Center against the ADOC concerning healthcare and other conditions at Tutwiler. (*Id.*, p. 1.)

According to Grissom, on June 6, 2017, due to a painful bout with kidney stones, Grissom was transferred to the Tutwiler infirmary.  Grissom's muscles contracted so severely that her intestines exited her body through a stoma and caused excruciating pain.  (Doc. 51, pp. 5-6.)  Grissom makes a series of allegations against Defendants Dr. David Gams, a physician who worked at Tutwiler, Wanda Manuel, a nurse at Tutwiler, and Linda Gilchrist, another nurse at Tutwiler, who she claims refused to provide Grissom with medication or otherwise attend to her severe condition. (Doc. 51, *passim*.)[2]

Grissom filed a series of grievances regarding her worsening and increasingly painful condition, including a grievance submitted to Lieutenant Brian Coleman. (Doc. 51, p. 14.)  Defendant Coleman, however, did not respond. Grissom's medical condition continued to deteriorate and worsen, including pain from the swelling below her stoma.  On August 23, 2017, Grissom completed a sick call form,

---

[2] Corizon, LLC is a company that employs the medical professionals at Tutwiler. (Doc. 51, p. 1.)

requesting medical treatment. (Doc. 51, p. 15.) On September 5, 2017, Grissom filed another grievance, complaining that she was not receiving Elavil. (*Id*.)  She began receiving Elavil on October 2, 2017. (*Id*., p. 16.)  Shortly thereafter, Grissom asked Lieutenant Yvette Young, the grievance officer, for assistance with her medical needs but did not receive a response until November 2, 2017. (*Id*.)

On November 14, 2017, Grissom attended a round table meeting with several members of the medical team and Chief Gordon, among others, in which she was informed that she would be scheduled for surgery and prescribed pain medication. (*Id*.)

In February 2018, Grissom was sent by the ADOC to St. Vincent's Hospital to have her stoma surgically corrected; however, the surgeon only corrected the existing stoma, but recommended additional surgery. (Doc. 51, p. 23.)

During the pendency of this lawsuit, Grissom was transferred to ATEF in Columbiana, Alabama. (Doc. 51, p. 28.)

## IV.   DISCUSSION

The Correctional Officials and Commissioner Dunn both argue that, as a threshold matter, Grissom's official capacity claims against them (Counts I and III) are due to be dismissed because the Court lacks subject matter jurisdiction. In particular, these Defendants argue that because Grissom specifically has alleged that she is not currently subject to ongoing violations of federal law at the ATEF facility

concerning her medical care, she therefore has not met the constitutional prerequisite for maintaining a § 1983 action against a state official who is being sued in his or her official capacity. (Docs. 64, p. 11; 75, pp. 8-9.)  In addition, Commissioner Dunn argues that Grissom lacks standing to bring a Title IX claim against him, and in the alternative, that Title IX is not applicable to the ADOC. (Doc. 75, pp. 17- 20). The Court will examine those contentions in that order.

### A. Grissom's Claims against Commissioner Dunn and the Correctional Officials in their Official Capacities

Grissom requests injunctive relief against the Defendants seeking to enjoin them from failing to provide her with adequate medical attention and conditions of confinement during the incident made the subject matter of the Second Amended Complaint.  Plaintiff is no longer incarcerated at Tutwiler.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself sow a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury); McGraw v. Temple, No. 2:11-cv-1087-WHA, 2014 WL 6862510, at *4 (M.D. Ala., Dec. 3, 2014).  As is clear from the pleadings and records before the court that Grissom is no longer incarcerated at Tutwiler, her requests for equitable relief have been rendered moot.

Therefore, Counts I and III against the correctional defendants are due to be DISMISSED without prejudice.

## B. Grissom's Claims Against the Correctional Officials in their Individual Capacities

The Correctional Officials also argue that the claims seeking damages against them in their individual capacities (Counts II and IV) should be dismissed based upon qualified immunity.[3]

To begin, "(q)ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be eligible for qualified immunity, an official must establish he was acting within his discretionary authority. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). When a government official is sued under a theory of direct liability, he or she may seek to have the complaint dismissed on qualified immunity grounds prior to discovery, based solely on the allegations in the pleadings. *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th

---

[3] Commissioner Dunn was not named as a defendant in these counts, and therefore the Court's analysis as to Counts II and IV only applies to the Correctional Officials.

Cir. 2019); *Holloman*, 370 F.3d at 1263 n.6; *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

The Correctional Officials assert, and Grissom does not dispute, their conduct, as alleged in the Second Amended Complaint, occurred within the scope of their discretionary authority. (Doc. 64, pp. 21-22; Doc. 76.)  Thus, the burden shifts to Grissom to show that qualified immunity is inappropriate. *E.g., Travers v. Jones*, 323 F.3d 1294, 1295 (11th Cir. 2003) ("Once the defendants established that they were acting within their discretionary authority, a point not in dispute here, the burden shifted to the plaintiff to show that qualified immunity is inappropriate."); *see Skop*, 485 F.3d at 1136–37.

To overcome the Correctional Officials' qualified immunity defense, Grissom must satisfy a two-prong test: she must show that (1) the Correctional Officials violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. *Holloman*, 370 F.3d at 1264. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). When a government official moves to dismiss a claim based on qualified immunity, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined. *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995); *Elias v.*

*Boswell*, No. 313-CV-22-WKW, 2013 WL 5883408, at *3, n. 6 (M.D. Ala. Oct. 30, 2013); *Adams v. Franklin*, 111 F.Supp.2d 1255, 1264 (M.D. Ala. 2000). That is, a defendant can defeat a plaintiff's § 1983 claim if the complaint fails to state a claim upon which relief can be granted. *Wooten*, 49 F.3d at 699. Similarly, under the defense of qualified immunity, a defendant is immune from liability if the complaint fails to state a violation of a clearly established constitutional right of which a reasonable person would have known. *Id.*

In Count II of her Complaint, Grissom argues that the Correctional Officials acted with deliberate indifference to her medical needs in violation of the Eighth Amendment because they did not intervene on her behalf to ensure that she received a different mode of medical care.   In Count IV, Grissom alleges that the Correctional Officials retaliated against her in violation of the First Amendment for filing multiple grievances concerning her medical care and in participating in a prior lawsuit against the ADOC regarding the conditions at Tutwiler. The Court will address these arguments in turn.

## 1. Grissom's Eighth Amendment Claim Against the Correctional Officials in their Individual Capacities.

To state a claim concerning the denial of adequate medical treatment in violation of the Eighth Amendment, Grissom must, at a minimum, allege that the Correctional Officials acted with deliberate indifference to her serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Taylor v. Adams*, 221 F.3d

1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). To prevail, the plaintiff must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *See Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1306–07 (11th Cir. 2009).

Grissom satisfies the first requirement because she has adequately alleged that she had a serious medical need. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" or one that is determined by whether a delay in treating the need would worsen the condition. *Hill v. Dekalb Reg'l Youth Det. Ctr*., 40 F.3d 1176, 1187-89 (11th Cir. 1994).  In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Mann*, 588 F.3d at 1307  (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

To properly allege deliberate indifference, Grissom must plead facts that allow the court to draw the inference that (1) the defendants were subjectively aware of a substantial risk of serious harm, (2) the defendants disregarded that risk, and (3) the defendants' conduct was more than gross negligence. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013); *Carter v. Galloway*, 352 F.3d

1346, 1349 (11th Cir. 2003); *Miller v. Corr. Med. Servs., Inc.*, No. 2:10-CV-583-WHA-WC, 2010 WL 3723998, at *4 (M.D. Ala. Sept. 16, 2010). The pleading should ascribe specific knowledge to each defendant because "each individual defendant must be judged separately and on the basis of what that person knew." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (internal brackets omitted); *see Elias*, 2013 WL 5883408, at *4. "Although notice pleading does not require a plaintiff to specifically plead every element of his cause of action, a complaint must still contain enough information regarding the material elements of a cause of action to support recovery." *AFL–CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011).

Deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Additionally, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot … be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

The Supreme Court has emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105; *see Mandel v. Doe*, 888 F.2d 783, 787 (11th

Cir. 1989). "(W)hether government actors should have employed additional…forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citing *Estelle*, 429 U.S. at 107); *see Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (the mere fact an inmate desires a different mode of medical treatment does not show deliberate indifference).

The Correctional Officials argue that they are not in any way involved in Grissom's medical decisions, (Doc. 64, p. 15), and indeed, Grissom does not allege that any of these officials actually participated in her medical care.  Grissom only asserts, as to Lieutenant Coleman, that he did nothing in the face of her complaint about her soiled laundry, (Doc. 51, p. 14); as to Lieutenant Young, that Grissom spoke to her to request additional medical assistance but that Young did nothing, (Doc. 51, p. 16); and as to Chief Gordon, that he attended a meeting where Grissom was informed that she would be receiving additional medical care. (Doc. 51, p. 20.) These allegations do not amount to a claim of deliberate indifference.  Putting aside her conclusory allegations that these defendants were aware of her medical needs, she has not in any way demonstrated that the Correctional Officials were aware, and consciously disregarded, "an objectively serious medical need." *See Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must

know of and then disregard an excessive risk of harm to the inmate); *see also Farmer*, 511 U.S. at 838 (failure to alleviate significant risk that officer "should have perceived but did not" was not deliberate indifference).

Grissom offers only conclusory allegations that each correctional official knew or should have known that she needed professional medical treatment sooner. "Without more factual allegations, the deliberate indifference claim fails to survive the scrutiny required at the motion to dismiss stage, especially where the qualified immunity defense is at stake." *Elias*, 2013 WL 5883408, at *5 (citing *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) ("[T]he Supreme Court instructs courts to resolve immunity questions at the earliest possible stage in litigation.") (quotation marks omitted)).

Insofar as Grissom seeks to hold the Correctional Officials liable for the treatment provided by the Corizon medical personnel, her argument also fails. The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff, or to intervene in medical treatment decisions where the officials have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *E.g., Cameron v. Allen*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

True enough, the Eighth Amendment "imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates." *Caldwell v. Warden,*

14

*FCI Talladega*, 1748 F.3d 1090, 1099–100 (11th Cir. 2014) (quoting *Farmer*, 511 U.S. at 832). However, a prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is *subjectively aware*, exists and the official does not respond *reasonably* to the risk." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotations and punctuation omitted) (emphasis added).

Grissom's conclusory allegations that the Correctional Officials were "subjectively aware" of a substantial risk of serious harm resulting from her medical needs and that these officials responded unreasonably to her complaints, fail to state a plausible claim for relief. *See Bell*, *supra*. Grissom's Eighth Amendment claim against the Correctional Officials in their individual capacities thus fails to state a claim upon which relief can be granted, and Count II of the complaint is therefore due to be DISMISSED.

## 2. Grissom's First Amendment Claim against the Correctional Officials in their Individual Capacities.

The First Amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986). The essence of a First Amendment retaliation claim is that a prisoner is penalized for exercising a right of free speech, particularly the right to petition the government for redress of grievances, by filing complaints or lawsuits regarding prison conditions. *See Sepulveda v. Burnside*, 170 F.App'x. 119,

123 (11th Cir. 2006); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989). An inmate may establish retaliation by demonstrating that the Correctional Officials' actions were in response to grievances concerning the conditions of her imprisonment. *E.g.*, *Farrow*, 320 F.3d at 1248 (citing *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989)).

To successfully bring a First Amendment retaliation claim under § 1983, Grissom must establish (1) that her speech or act was constitutionally protected, (2) that the defendant's retaliatory conduct adversely affected the protected speech, and (3) that there is a causal connection between the retaliatory actions and the adverse effect on the speech. *See Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008); *see Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005). Conclusory allegations of retaliation are insufficient to meet this burden. *See Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984) ("In civil rights...actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.").

Grissom alleges that the Correctional Officials retaliated against her for participating in a previous lawsuit and for filing multiple grievances.   These

allegations satisfy the first element of her retaliation claim, *i.e.*, the exercise of a protected right. *See Smith*, 532 F.3d at 1276.

To prevail on the second element, the adverse action that Grissom suffered as a result of the Correctional Officials' alleged retaliation must be such that it "would likely deter a person of ordinary firmness from engaging in such speech." *Smith*, 532 F.3d at 1277. The second element of the cause of action thus requires "an objective standard and a factual inquiry." *Id*. Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact that is generally inappropriate to determine at the motion to dismiss stage. *E.g.*, *Osterback v. Kemp*, 300 F.Supp.2d 1238, 1256 (N.D. Fla. 2003) (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). Therefore, the Court will assume, *arguendo*, that the second element has been met at this stage of the proceeding.[4]

Grissom, however, fails to allege any facts regarding the third requisite element of her retaliation claim, i.e., a causal connection between her constitutionally protected activity and the alleged adverse inaction by the Correctional Officials. Under the third prong, to demonstrate a causal relationship,

---

[4] Grissom's complaint mentions that she was placed in solitary confinement by "Tutwiler staff," but then curiously, lays the blame for her confinement squarely at the feet of Nurse Manuel, who apparently placed Grissom in solitary confinement for filing so many grievances. (Doc. 51, pp. 21-22.) Due to the shotgun nature of her complaint, it is unclear whether this action is also part of the complained-of retaliatory conduct against the Correctional Officials. But that is in the end immaterial because the Court assumes the second element of the test for a valid retaliation claim has been met for purposes of this opinion.

Grissom must show that the prison officials' actions were a result of her having filed grievances concerning the conditions of her imprisonment and participating in the prior lawsuit. *See O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011); *Thomas v. Lawrence*, 421 F.App'x 926, 928 (11th Cir. 2011) ("The third element...'asks whether the defendants were subjectively motivated to discipline because [the inmate] complained of the conditions of [her] confinement.'") (citing *Smith*, 532 F.3d at 1278). The causal connection inquiry focuses on the subjective motivation of the defendants, and the Court will therefore address whether Grissom has sufficiently alleged that the Correctional Officials were subjectively motivated to refuse to assist her in obtaining proper medical treatment in retaliation for filing prior grievances. *See Smith*, 532 F.3d at 1278.

The Correctional Officials deny the allegation of retaliation made by Grissom and maintain they did not intervene in the medical treatment provided to her because such treatment was due to be undertaken by medical professionals. (Doc. 64, p. 15.) Grissom offers only her conclusory allegations of ultimate fact that the officials retaliated against her for filing grievances and assisting in a prior lawsuit.

The Court is unable to discern any factual allegations from Grissom's complaint, as amended, that are directly attributable to the conduct of defendants Coleman and Young. As to Chief Gordon, Grissom's allegations about his retaliatory motive are even more remote; the only mention of Chief Gordon in the

lawsuit is an allegation that he attended a meeting where Grissom was informed she would be *receiving additional medical care*. Such conclusory allegations are insufficient to survive a motion to dismiss. *See Thomas*, 421 F.App'x at 929 (affirming dismissal of retaliation claims where inmate's grievance concerned only one staff member and the "complaint failed to allege any facts that would suggest that any of the other named defendants had a reason to retaliate against [the inmate] for filing the grievance" against the staff member named in the grievance). Without sufficient factual allegations attributable to these Defendants, Grissom's First Amendment retaliation claim directed at the Correctional Officials fails to state a claim upon which relief may be granted, and therefore Count IV of the complaint is due to be DISMISSED.

### C. Grissom's Title IX Claim

In Count V of the Second Amended Complaint, Grissom brings a claim against Commissioner Dunn for declaratory and injunctive relief under 20 U.S.C § 1681(a), *et seq.* ("Title IX"), concerning alleged inequalities of educational opportunities between male and female inmates at ATEF.  In particular, Grissom alleges that, at the ATEF facility, men receive more time in educational instruction than women, and while she "is not personally acquainted with the instruction offered to men at facilities operated by ADOC, upon information and belief, she believes that the instruction offered to men at those facilities is generally better (not only in

terms of breadth and number of hours, but in terms of the quality of instruction) than that offered to women at facilities operated by ADOC." (Doc. 51, p. 29.) She claims that this disparity is a result of "program directions provided by Commissioner Dunn" and other ADOC officials. (*Id.*)[5] Further, Grissom alleges that these educational programs are federally funded. (*Id.*)

Commissioner Dunn argues that Grissom lacks standing to pursue the Title IX claim.[6] To have Article III standing, the following elements must be satisfied:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and

---

[5] At oral argument, Grissom's counsel also noted that the ATEF educational programs mostly involve training in male-dominated fields, such as plumbing and welding. In the Second Amended Complaint, Grissom asserts that women at ATEF are deprived of certain educational opportunities administered by the ADOC that are given to male inmates. (Doc. 51, pp. 28-29.) For example, she alleges that, if a woman was to receive one hour of educational instruction under the program, a male studying the same subject would receive several hours more. (Doc. 51, p. 29.)

[6] Commissioner Dunn argues that a Title IX claim is not cognizable in the prison context. Title IX provides that "(n)o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance..." 20 U.S.C. § 1681(a). The Court is unaware of, and Grissom does not point to, any case in this Circuit holding that Title IX applies to correctional facilities. *But see Campbell v. Wood*, No. CV-01-CO-1433-S, 2005 WL 8158133, at *10 (N.D. Ala. Aug. 2, 2005) (a district court within this circuit applying Title IX to a correctional facility—the Alabama Department of Youth Services ("DYS")). Other circuit courts, however, have applied Title IX to prison programs under certain circumstances. *See Roubideaux v. N. Dakota Dep't of Corr. & Rehab.*, 570 F.3d 966, 978 (8th Cir. 2009) ("Vocational education, on the other hand, is expressly within the scope of Title IX) (citing 20 U.S.C. § 1687(2)(B)); *Klinger v. Dep't of Corr.*, 107 F.3d 609, 615 (8th Cir. 1997) (holding that Title IX's prohibitions on discrimination cover any educational program provided by a state correctional agency if the agency receives federal financial assistance) (citing 20 U.S.C. § 1687(1)(A)); *Jeldness v. Pearce*, 30 F.3d 1220, 1224–25 (9th Cir. 1994) (citing *Canterino v. Wilson*, 546 F.Supp. 174 (W.D. Ken. 1982), *vacated on other grounds*, 869 F.2d 948 (6th Cir. 1989); *Beehler v. Jeffes*, 664 F.Supp. 931 (M.D. Pa. 1986). Given the apparent absence of precedent in this Circuit on this issue, at present, the Court reserves ruling on the applicability of Title IX in the adult prison setting under the facts currently pleaded in the Complaint.

(b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

At this stage of the proceedings, Grissom's Title IX claim fails to meet any of *Lujan's* requirements.  First, Grissom does not provide any specific facts as to how *she* has been injured by the supposed inequal educational instruction at ATEF, let alone how the supposed disparity is fairly traceable to Commissioner Dunn. Moreover, by Grissom's own admission, she is not personally acquainted with the instruction offered to men, but merely speculates that men receive more, and better quality, instruction. Such conjecture is insufficient to establish Article III standing for purposes of seeking an injunction. *See Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1303 (11th Cir. 2007) (plaintiff lacked standing to pursue injunctive relief because the threat of future harm to plaintiff and others was merely conjectural); *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.") (citation omitted).

Furthermore, as to Grissom's claim for a declaratory judgment, a plaintiff must prove not only an injury, but also a real and immediate threat of future injury in order to satisfy the "injury-in-fact" requirement. *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004). Grissom's Second Amended Complaint, however, fails to set forth specific allegations demonstrating that she was deprived of a particular educational opportunity at ATEF.

During oral argument, Grissom's counsel stated that Grissom receives one hour of welding class for every eight hours a male receives in class. Those specific facts, however, are not pleaded in the Second Amended Complaint and therefore do not, in the present form, defeat the Motion to Dismiss. However, in her Response to the Defendants' Motion to Dismiss, Grissom's counsel acknowledges the lack of specificity and requests the opportunity to amend her Title IX claim regarding the educational opportunities for women at ATEF. (Doc. 80, p. 15.) Consequently, in the interest of justice, the Court will allow Grissom's counsel to file an amendment to her Title IX claim for the purpose of incorporating additional facts related to her own educational challenges at ATEF. No other amendments to the Complaint, as amended, will be permitted. Accordingly, Count V of Grissom's Second Amended Complaint is due to be DISMISSED without prejudice. Grissom, however, will have one opportunity to replead her Title IX claim against Commissioner Dunn.

## IV. CONCLUSION

Accordingly, for foregoing reasons it is ORDERED as follows:

(1) To the extent Commissioner Dunn seeks to dismiss Counts I and III, as well as Count V as pleaded, the Motion to Dismiss the Second Amended Complaint (Doc. 74) is GRANTED, and the claims against Defendant Dunn are dismissed without prejudice;

(2) To the extent the Correctional Officials move to dismiss all claims lodged against them, the Correctional Officials' Motion to Dismiss the Second Amended Complaint (Doc. 63) is GRANTED, and the claims against Defendants Sam H. Gordon, Yvette Young and Brian Coleman are dismissed without prejudice;

(3) Defendants Sam H. Gordon, Yvette Young and Brian Coleman are DISMISSED as defendants; and,

(4) Plaintiff Tracey Grissom is granted leave to amend only Count V of her Second Amended Complaint.

DONE, this 11th day of June, 2020.

                    /s/ R. Austin Huffaker, Jr.
                    R. AUSTIN HUFFAKER, JR.
                    UNITED STATES DISTRICT JUDGE