IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TRACEY GRISSOM, | ) |
| | ) |
|     Tracey, | ) |
| | ) |
| v. | ) Case No. 2:19-cv-00420-RAH-WC |
| | ) |
| CORIZON, LLC, et al., | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFF'S TRIAL BRIEF**

Tracey Grissom respectfully submits this trial brief.

**Introduction**

As stated in the Second Amended Complaint [Doc. 51], and in light of the Court's order granting summary judgment in part [Doc. 152],   The claims remaining against Corizon and Lynda Jackson are whether Corizon and Jackson, or either of them, acting under color of state law, were deliberately indifferent to the medical needs of Grissom when they failed and/or refused to provide her with the necessary medical treatment for her serious medical condition, in violation of the Eighth Amendment.  Defendants answered Plaintiff's Second Amended Complaint [Doc. 67].

At trial, Plaintiff will prove (1) that Grissom had a serious medical need; (2) that Jackson and/or Corizon knew that Grissom had a  serious medical need; (3)

that Jackson and/or Corizon failed to provide necessary medical care for Grissom's serious medical need in deliberate indifference to the risk of serious harm; (4) that Jackson and/or Corizon's conduct caused Grissom's injuries; and (5) that Jackson and Corizon acted under color of law.

**Statement of Facts**

Plaintiff, Tracey Grissom, is an inmate in the custody of the Alabama Department of Corrections and was incarcerated at Tutwiler Prison at all times relevant hereto. (Doc. 136-1)

Due to the severe sexual abuse Tracey suffered at the hands of her now deceased husband, Tracey has been required to undergo a number of surgeries that impacted her pelvic area. Tracey now has an ostomy, which allows feces to pass from her digestive tract through a hole in her abdomen, known as a stoma, into a prosthetic known as a "pouch" or "ostomy bag", which is carried on the outside of her body. (Doc. 136-1)

In June 2017, Tracey was required to have surgery due to a herniated stoma and small bowel obstruction. (Doc. 136-1). Tracey's post-surgical stoma was flush, that is to mean level with the surface of the abdomen, which position required a particular prosthetic device known as a special deep convex ostomy bag, to properly and hygienically collect the waste expelled from Tracey's body. (Doc. 136-1)

During the relevant time period, from June 2017 through February 2018, Defendant Lynda Jackson ("Jackson") was employed by Corizon as the Director of Nursing (DON) at the Tutwiler Correctional Facility. (Doc. 136-4-Jackson Depo @ 10:7-14). During that time period, DON Jackson was responsible for ordering all medical supplies for the Tutwiler infirmary, including ostomy supplies. (Doc. 136-4-Jackson Depo @ 25:4-23). According to DON Jackson, Corizon's company policy required that be purchased only from McKesson Pharmaceutical, a distributor of wholesale medical supplies and equipment. (Doc. 136-4-Jackson Depo @ 26-27:12-23; 1-11)

DON Jackson was responsible for ordering all medical supplies for the Tutwiler infirmary, including ostomy bags. The infirmary regularly kept in stock ostomy bags in several different sizes and styles. (Doc. 136-4-Jackson Depo @ 27-29:12-23; 1-23; 1-22). However, none of these ostomy bags met the requirements for Tracey's special needs. Due to being forced to use the incorrect ostomy bag, Tracey suffered from severe painful excoriation as a result of the fecal matter and digestive fluids that leaked onto her skin. As a result, Tracey suffered incredible pain and humiliation.

Corizon's wound care specialist, Gayle Moore, was called in by Dr. Gams to evaluate Tracey's stoma and severe excoriation. Based on that evaluation, Moore determined that, due to Tracey's flush stoma, she needed a "special" deep convex ostomy bag. (Doc. 136-4-Jackson Depo @ 30-32:20-23; 1-23; 1-2) (Doc. 136-2), which were then prescribed by Dr. Gams.

DON Jackson was advised that Dr. Gams had ordered the special deep convex bags for Tracey per the recommendation of wound care specialist, Gayle Moore. (Doc. 136-4-Jackson Depo @ 32:3-15) (Doc. 136-3-Gams Depo @ 62:16-19). DON Jackson also knew that there were other companies that manufactured the special ostomy bag that Tracey needed, but testified in her deposition that she could only purchase the pouches through McKesson, with whom Corizon had a contract for the purchase of medical supplies. (Doc. 136-4-Jackson Depo @ 33:3-12)

From June 2017 through December 2017, DON Jackson failed to provide Tracey with the special deep convex ostomy bags recommended by wound care expert Gayle Moore and prescribed by Dr. Gams. (Doc. 136-1) As a result, the ill-fitting ostomy bags that were provided allowed fecal matter and digestive fluid to flow onto Tracey's skin, causing excoriation to the skin around the stoma. (Doc. 136-1) The resulting fecal matter that flowed from the ostomy bags soiled Tracey's clothing and smelled very bad, which was embarrassing, humiliating and caused other inmates to complain about the odor and to ostracize her. (Doc. 136-1) (Doc.

118-1-Grissom Depo @ 67-68:12-23; 1-8)  It was well-known throughout Tutwiler that Tracey suffered from painful excoriation of the skin around her stoma, caused by the use of the improper ostomy bags. (Doc. 136-1) (Doc. 136-4-Jackson Depo @ 42:4-23) (Doc. 25-3 @ 62) (Doc. 25-3 @ 56) (Doc. 25-3 @ 65).

DON Jackson knew that the ostomy bags that were provided to Tracey during this time period were ill-fitting and would not adhere to her flush stoma. DON Jackson further knew that the ill-fitting bags leaked fecal matter onto Tracey's skin, causing painful excoriation. (Doc. 136-1) However, DON Jackson never even attempted to order the special deep convex ostomy bags required by Tracey from anywhere other than McKesson Pharmaceutical:

> "McKesson is who we used. If they had them, we had to use that company because that's who Wexford Corizon was going to pay. That's how they're billed, so that's who I had to go through." (Doc. 136-4-Jackson Depo @ 32-33:16-23; 1-2).

According to Dr. Robbins, Corizon's corporate representative, Corizon employees were able to purchase medical supplies from sources other than McKesson Pharmaceutical and could even obtain supplies from Amazon or the local Walgreen's when necessary. (Doc. 136-7-Robbins Depo @ 52-53:15-23; 1-2. Defendants' expert, Peggy Minyard RN, further confirmed that Corizon employees are able to go outside of McKesson for medical supplies and "we have done that many times for special things that we needed". (Doc. 118-11-Minyard Depo @ 91:3-8) Despite all evidence to the contrary, DON Jackson chose, with deliberate

indifference, conscious and reckless disregard of the consequences of her acts and omissions, to ignore the Tracey's condition and pleas for relief. As DON Jackson so blithely put it,

> "But it wasn't an emergency; it was basically use what you have until you can get those. So it wasn't like she's got to have those today. It wasn't going to hurt her or cause any type of detrimental (sic) to her to continue using the bag she had." (Doc. 136-4-Jackson Depo @ 33:14-20)

**Issues**

I. Whether Corizon and/or Jackson were deliberately indifferent to Plaintiff's serious medical need when they failed and/or refused to provide adequate medical treatment in reckless disregard to the substantial risk of harm to Plaintiff, in violation of the Eighth Amendments' prohibition against cruel and unusual punishment.

**Legal Summary**

> **I.** *Defendants' indifference to Tracey's serious medical need violated Tracey's Eighth Amendment rights.*

To prove liability against Corizon under existing precedent, Tracey must prove the company had a custom or policy that caused a violation of her rights under the Eighth Amendment's prohibition against cruel and unusual punishment. The evidence unequivocally establishes that Corizon had a policy of refusing to purchase necessary medical supplies unless those supplies were available for purchase from a single vendor, McKesson Pharmaceutical. Its slavish adherence to this policy led Corizon to ignore for months Tracey's serious medical condition.

Corizon's indifference to Tracey's serious medical need violated her Eighth Amendment rights.

Controlling precedent and the facts of this matter establish that Tracey suffered from a serious medical condition as a matter of law. The Eleventh Circuit has written:

> Indeed, every sister circuit (except the Federal Circuit) has recognized that the deprivation of basic sanitary conditions can constitute an Eighth Amendment violation. *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (per curiam) ( "[A]llegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief."); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ( "Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment."); *Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992) ("It would be an abomination of the Constitution to force a prisoner to live in his own excrement for four days . . . ."), *superseded by statute on other grounds as recognized by Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (2000); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (noting that "inmates are entitled to reasonably adequate sanitation" and finding Eighth Amendment violation where cell was "covered with . . . human waste"); *Inmates of Occoquan v. Barry*, 844 F.2d 828, 836, 269 U.S. App. D.C. 210 (D.C. Cir. 1988) (recognizing "sanitation" as a "basic need" for prisoners protected by the Eighth Amendment*); Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986) ( "[T]he Eighth Amendment protects prisoners from being . . . denied the basic elements of hygiene.") (quotation omitted); *Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) ( "[A] state must furnish its prisoners with reasonable adequate . . . sanitation . . . to satisfy [the Eighth Amendment's] requirements.") (quotation and alteration omitted); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) (noting that the failure to provide "minimally sanitary" conditions "amounts to a violation of the Eighth Amendment"); *Hawkins v. Hall*, 644 F.2d 914, 918 (1st Cir. 1981) (explaining that prison conditions "must be sanitary") (quotation omitted); *Hite v. Leeke*, 564 F.2d 670, 672 (4th Cir. 1977) (recognizing that "the denial of decent and basically sanity living

conditions and the deprivation of basic elements of hygiene" can violate the Eighth Amendment) (quotation omitted); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ( "Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."). Moreover, the Supreme Court recognized in *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002), that "a deprivation of bathroom breaks . . . created a risk of particular discomfort and humiliation" for the plaintiff, a prisoner who had been attached to a hitching post for seven hours. *Id.* at 738.  *Brooks v. Powell*, 800 F.3d 1295, 1304 (11th Cir. 2015).

Where a person acting under color of State law refused to provide medical care because of a procurement policy that prefers one vendor of medical supplies over another, that policy violates the Constitution. The Eighth Amendment requires adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976). There is no "procurement policy" exception to the Constitution.

Corizon knew that Tracey had a flush stoma that required a special deep convex ostomy pouch. Their own employees recommended and prescribed the solution for dealing with that problem.  But Corizon's policy kept Tracey from getting what she needed to ameliorate her injury and lessen her shame. Corizon violated Tracey's rights under the Eighth Amendment.

Defendant Jackson was the Director of Nursing (DON) at Tutwiler. She worked for Corizon. When medical supplies had to be purchased, DON Jackson was the person responsible for causing the company to purchase them.

DON Jackson testified that Corizon purchased medical supplies from McKesson Pharmaceutical. Based on her deposition testimony, DON Jackson believed that she could cause Corizon to purchase supplies only from McKesson. Other witnesses testified that Corizon would allow other medical supplies to be obtained from other sources.

Regardless of whether Corizon had a formal policy prohibiting DON Jackson or other employees from purchaing medical supplies from other sources, the fact is that DON Jackson did not cause Corizon to purchase deep convex ostomy pouches from any source.

If Corizon did *not* have a formal policy prohibiting Nurse Jackson from causing Corizon to purchase medical supplies from companies other than McKesson and DON Jackson simply refused to take the measures necessary to obtain the supplies necessary for medical treatment, DON Jackson was the direct cause been of the violation of Tracey's Eighth Amendment rights.

If DON Jackson refused to purchase the pouches sources other than McKesson even though Corizon lacked a formal policy restricting her to purchasing only from McKesson, Corizon itself would still be liable, because DON Jackson was a policymaker. *Jackson v. Corizon Health*, No. 20-14737, 2022 U.S. App. LEXIS 3037 (11th Cir. Feb. 2, 2022); *Grech v. Clayton Cty.*, 335 F.3d 1326 (11th Cir. 2003). She was a policymaker by virtue of her role as Director of

Nursing, which put her in charge of ordering supplies. When a person with authority for an organization takes an action over and over, that person establishes policy for the organization. *Cf. Morgan v. Tucker*, No. 3:13-cv-81-J-34PDB, 2016 U.S. Dist. LEXIS 36054 (M.D. Fla. Mar. 21, 2016) (where plaintiff failed to identify the Corizon employee who had authority for unconstitutional behavior). Over and over, for months, convex ostomy pouches were not ordered for Tracey. Whether DON Jackson or someone else promulgated the policy of refusing to purchase convex ostomy pouches, that was the policy for Corizon. The result was a grievous Eighth Amendment violation. *Brooks v. Powell*, 800 F.3d 1295, 1304 (11th Cir. 2015); *Fields v. Prison Health Servs.*, No. 2:09-cv-529-FtM-29DNF, 2011 U.S. Dist. LEXIS 99244, at *17-18 (M.D. Fla. Sep. 2, 2011).

**Damages**

When this case was filed, the 11th Circuit still adhered to a unique interpretation of the Prison Litigation Reform Act, 42 U.S.C. 1997e, under which interpretation an inmate was not allowed to recover money damages under 42 U.S.C. 1983, unless the inmate suffered a physical injury. The unique interpretation of the PLRA may well have given the defendants in this case the courage, as it were, to allow Tracey to live in her own feces month after month while other inmates mocked and threatened her. From their perspective, it was harmless to humiliate her in this way, since would have no reason to expect they

would ever have to answer in money damages for their cruel and unusual punishment.

    Tracey contends that she suffered a serious injury allowing her to recover money damages. However, even if she did not suffer a physical injury, she is now entitled to recover money damages under controlling precedent in the 11th Circuit. *Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021). Even absent a physical injury, she is entitled to recover nominal damages and punitive damages, although a physical injury remains necessary to recover compensatory damages.

    Respectfully submitted,

*/s/ Michele E. Pate*
Michele E. Pate (ASB-4457-E49F)
Law Office of Michele E. Pate
P.O. Box 3391
Jasper, AL  35502
Phone: (205) 275-1700
Email:  mpatelaw@gmail.com

OF COUNSEL

Frank Ozment (ASB-7203-N73J)
Frank Ozment Attorney at Law, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
Phone: (205) 918-8905
Email: frankozmentlaw@gmail.com

**Attorneys for Plaintiff**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 13, 2023, I served, via the Court's electronic filing system, a copy of the above and foregoing on the following:

Phillip G. Piggott
WEBSTER, HENRY, BRADWELL,
COHAN, SPEAGLE & DESHAZO, P.C.
Two Perimeter Park South, Suite 445 East
Birmingham, AL 35243
Telephone: 205-986-4400
Facsimile: 205-380-3485
E-Mail: ppiggott@websterhenry.com

                                                */s/ Michele E. Pate*
                                                Michele E. Pate